# Richardson *vs* Parrott's Heirs.

ERROR TO THE WASHINGTON CIRCUIT.

*Infant's real estate. Interest. Mortgage.*

JUDGE BRECK delivered the opinion of the Court.

*June* 25.

IN 1839, the heirs of Parrott filed their petition in the Washington Circuit Court, and obtained a decree for the sale of a large tract of land and several slaves, which had descended to them from their ancestor. *Case stated.*

At the sale made by the Commissioner, Richardson became the purchaser of the land, and executed his notes with security, to the heirs for the purchase money, payable in three annual instalments, as required by the decree. The sale was reported by the Commissioner, and confirmed by the Court; and the same Commissioner was appointed to collect the purchase money and pay it over to the heirs, and when collected, to make a deed to the purchaser.

The purchaser paid the Commissioner about $1,500 upon the first note, and an arrangement was then made between the adult heirs and the guardians of the infants, and the Commissioner and Richardson, by which the latter, with the same sureties, executed his notes to the heirs severally, for their respective portions of the residue of the purchase money, and took up the original notes; the Commissioner made him a deed for the land, and he executed a mortgage thereon, and upon other property, slaves and personalty, to secure the payment of the new notes. This arrangement was made in September 1841, a few days before the second instalment became due.

The Commissioner subsequently reported to the Court, that he had collected and paid over the purchase money to the heirs, and also reported a deed, which, as directed, he had made to the purchaser. The deed was confirmed, and the case was stricken from the docket.

Richardson subsequently executed two other mortgages, including other property, and to secure the payment

of other debts, as well as those or portions of those provided for in the first mortgage.

In 1842, George W. Parrott exhibited his bill seeking a foreclosure of the mortgages, and also an attachment, which was awarded him, against the slaves and personalty included in the mortgages. All the proper parties were made and brought before the Court.

Richardson immediately answered, made his answer a
cross bill, and sought a rescission of his purchase of the land, upon the alledged ground that the sale made under the decree was void; that the heirs had no title to a portion of the land; that to other portions of it was defective and incumbered with dower; that by the fraud and combination of the complainant and others, he had been induced to go into the arrangement, and give new notes, and execute the mortgage; that the title of the heirs had been fraudulently represented to be good, and he had but recently discovered that it was defective; that the Commissioner had no authority to make the deed at the time; that suit was then pending for a portion of the land. He also alledged that he was entitled to certain credits upon the new notes, and he called upon the parties to produce and file them. He tendered back the land, and prayed that the purchase money which he had paid might be refunded, and for general relief.

The defendants resisted the relief sought, denied all
the allegations of fraud, insisted that the sale was valid, and the title to the land good.

The Court below, after requiring bond with surety to
be executed by the adult heirs of Parrott to Richardson, warranting the title to the land, decreed a foreclosure of the mortgages, and a sale of the mortgaged property for the payment of the mortgage debts.

To reverse that decree, Richardson prosecutes this writ of error.

The first and most important question presented for consideration, is whether the Court below erred in not decreeing a rescission of the contract in regard to the purchase of the land by Richardson. In view of that question, we will first enquire as to the alledged invalidity of the sale as made by the Commissioner.

It is contended the sale was unauthorized and void for the following reasons:

1st. That the petition for a sale was in the name of the heirs by their guardians, and not in the name of the guardians.

2d. That G. W. Parrott, an adult heir, united in the petition.

3d. That affidavit to the petition was not made by the guardians.

The act of 1813, under which this proceeding was had, authorises the guardian to apply by petition to the Circuit Court for a sale of his ward's, or the infant's estate. It is not in express terms provided that the petition shall be in the name of the guardian, but such is very clearly the inference, from the first section of the act. From a clause in the 2d section, however, it seems equally clear that the heir or infant was to be a petitioner. But even conceding that it would be more strictly in conformity with the act, that the petition should be in the name of the guardian, yet we are inclined to the opinion, that a petition in the name of the infant, by his guardian, and when, as in this case, it is manifest the application was in point of fact by the guardian, would be clearly within the spirit of the act, and should be deemed equivalent to a petition in his name. As satisfactory evidence that the petition in this case was virtually the petition of the guardians, they all appeared in Court and executed bonds as required by the statute, and which were approved by the Court prior to the decree for a sale. We are of opinion, therefore, that the first objection did not affect the jurisdiction of the Court or the validity of the sale, and could not even by the infants be rendered available to disturb it. Such also is our opinion as to the second objection. Whether the consent to a sale by the adult heir is indicated in the petition or by an answer when brought before the Court by summons, as required by the statute, cannot, it seems to us, be deemed material. His consent would be equally binding and conclusive upon him in the one way as in the other, and the object of the statute in requiring him to be brought before the Court, is fully attained by his joining in the petition.

RICHARDSON
vs
PARROTT'S H'RS.

A petition in the name of the infant by his guardian for the sale of real estate, is a conformity with the statute, and equivalent to a petition in the name of the guardian. The uniting of an adult heir is a valid expression of assent to the sale as an answer would be.

RICHARDSON
vs
PARROTT'S H'RS.

That the petition
is not sworn to
will not render
the sale invalid,
(B. Monroe,176)
and Lampton vs
Usher's heirrs (7
B. Monroe.)

The failure of the guardians to make affidavit to the petition is a more substantial objection, but not one which the infants could render available for disturbing the sale.

As was held by this Court in *Gates* vs *Kennedy, &c.,* (3 *B. Monroe,* 167,) and in *Lampton* vs *Usher's heirs,* decided at the last term of this Court, it would not render the decree or sale void, the affidavit not being essential to give the Court jurisdiction.

The proceedings in other respects in regard to the sale, appear to have been regular and in compliance with the statutory requisitions. We are, therefore, of opinion that the objection raised to the commissioner's sale constituted no ground for a rescission.

Upon the sale of
infants     estate
upon credits, the
purchaser   paid
one instalment,
and for the resi-
due    gave   his
bonds and mort-
gages to the adult
heirs and guar-
dian of the in-
fants. Held that
upon receipts be-
ing passed to the
Com'rs. that  he
might   convey,
and that his con-
veyance accept-
ed by the pur-
chaser and con-
firmed by  the
Court,    passed
the title of the
heirs.

The validity and effect of the commissioner's deed present the next subject of inquiry. It is insisted that in point of fact, the purchase money was not all collected nor all due when the deed was executed, and for that reason that the Commissioner was not authorized to make it. It is true when the deed was made, only a portion of the first note had been actually received by the Commissioner, but all the notes had, nevertheless, been taken up and discharged. The proceeds of the sale had been distributed among the heirs and for the part not actually paid in money, new notes for their respective portions had been given to them or their guardians, with additional security, and upon long credits. Receipts were executed to the Commissioner, which, together with the deed, were reported to the Court, and the whole confirmed. The arrangement it appears, was well understood, made by the consent and was supposed to be for the benefit of all parties concerned. There is no evidence that it was effected through misrepresentation or fraud on the part of the heirs as charged. It was an object, as set forth in the petition for a sale, to render the estate of the infants more productive by realizing interest upon the proceeds thereof. This object was as effectually attained by loaning the money to Richardson, if well secured, as to any other person. Richardson desired more time, as he was unable to meet the payments according to the terms of the sale.

Under the circumstances, therefore, we are inclined to the opinion that the arrangement, as to that portion of the purchase money not actually paid, should be regarded as equivalent to the payment thereof, so far at least as the Commissioner was concerned, and as to authorize him to execute the deed. But even if this position were questionable, as the deed was actually made by the Commissioner, accepted by Richardson and approved and confirmed by the Court, it was, in our opinion, valid to pass the title and interest of the heirs. That the deed was accepted very satisfactorily appears. Besides other evidence, it is manifest from the recitals in the mortgage from Richardson to the heirs. But it is insisted that the acceptance of the deed under the circumstances of this case, did not place Richardson in the attitude of an ordinary purchaser under an executed contract. Whether he should, in strictness, be regarded in that light and as being thereby concluded upon the question of a rescission, except upon the ground of fraud, it is not important to decide, as we are not satisfied, in any view of the case, that he has manifested a right to relief to that extent. All the allegations of fraud are denied and are unsupported by the testimony. When the sale was made, so far as appears, the title was not known nor supposed to be defective or doubtful. Nor is it shown that there was any doubt entertained in regard to its validity when the deed was made and accepted, except as to a dower claim to a small portion of the tract, of which Richardson was fully apprised. In the whole tract sold there was near five hundred acres, which had been purchased by the ancestor of the heirs, at different periods and in different parcels. Possession of nearly the entire tract had been held by him and the heirs for more than twenty years. But it is true that flaws in the title to some portion of the land have been discovered, but not of a character and to an extent in any view of the case, to justify a rescission. They were discovered, it seems, by Richardson, about three years after his purchase, when the land had somewhat declined in value and he found his means inadequate to pay for it.

But notwithstanding sufficient ground is not made out for a rescission, yet we think he had sufficient ground for the exhibition of his cross bill, and manifested, to some extent, a right to relief. The Commissioner's deed contains a clause of general warranty as to all the heirs, and was no doubt made and received under an erroneous impression that it was properly so drawn, and was obligatory upon them. As to the adult heirs, having been made not only by their consent but at their instance, it may be binding upon them, but we are inclined to the opinion it is not upon the infants.

The statute authorizes a deed of bargain and sale to be executed by the Commissioner to the purchaser and declares that it shall invest him with all the right, title, interest and claim, at law as well as in equity, which the infant had in the premises. It is silent, however, as to any liability which the infant was thereby to incur in regard to the title. A sale merely of the title and interest of the heir, seems to have been contemplated; no express authority for binding him in the conveyance for the title is conferred, and in our opinion none can be implied.

In the sale of the real estate of infants, only their legal and equitable title is sold, and that alone should be conveyed. No warranty can be added against adverse titles.

But Richardson not only may be presumed to have accepted the deed, supposing it to be obligatory upon the heirs, but the testimony conduces strongly to prove that he may have been led to believe that such was to be the character of the deed from what transpired at the sale in regard to the terms thereof. In this view of the deed and the circumstances under which it was accepted, and inasmuch as the title to some extent, appears defective, we think he was entitled to an indemnity, at least equivalent to the warranty in the deed, as required by the Court. This was more manifestly proper and equitable, as the heirs were appealing to the Chancellor to enforce their liens upon the land for demands arising out of the purchase money.

As Richardson, therefore, was entitled and obtained relief upon his cross bill, the Court erred in not decreeing him his costs.

But the decree is also, in other respects, deemed erroneous. G. W. Parrott alledges that the notes which he

held upon Richardson, were unpaid except $55, paid on the 4th October, 1841. Richardson alledges in his cross bill that he was entitled to a credit for the $55, and also for $185, and to a note for $143 on Forsyth, which he had delivered or transferred to G. W. Parrott. He denies that he has received credit for these sums, and calls for the filing of all his notes held by the mortgagees. None of the notes appear to have been filed, except a note pay-able to one of the guardians. G. W. Parrott admits in his answer to the cross bill, the payment of the $55, and says it is credited upon the note which he holds upon Richardson. The payment of the $185 he avers was paid before the settlement, when the notes were executed, and was taken into the estimate and credited. He admits receiving the note upon Forsyth, but says he received it as a member of the firm of Parrott & Robertson, to whom it was assigned, and that Richardson was credited upon their books for the amount. In the second mortgage made in July, 1842, Richardson provides for a debt due Parrott & Robertson, by account for merchandize for $150. Whether the note on Forsyth was received in part of that account, does not appear. In view of these facts, the Court erred in decreeing G. W. Parrott the whole amount of his claims embraced in the mortgages, without any credit. It is manifest Richardson was entitled to a credit for the $55 as against G. W. Parrott, and not entirely certain that he should not have been credited for the $185. When the $143 note was assigned to Parrott & Robertson, does not appear. They do not exhibit their account. Before decreeing the whole amount of their claim, they should have been required to exhibit their account. And it seems to us, under the circumstances of this case, manifestly proper that all the mortgagees should have been required to file their notes. They were the best evidence of the amount of the claims secured by the mortgages. Besides the mortgages do not state the times when the notes respectively fell due, although the periods from which they bore interest are stated. Some of them, according to the answer of Parrott, were payable four and five years after date, and but for an alledged stipulation, they were to become immediately due upon

the failure to pay the annual interest, they would not have been due when the decree was rendered. It is true Richardson might have obtained a rule upon the parties to file them, but having called for their production in his answer, the Court might well have required them to be filed without a rule; and if not satisfied upon their inspection in regard to the credits claimed by Richardson, might and should have directed an inquiry.

The objection that interest upon the claim or account of Parrott and Robertson from the date of the mortgage was decreed, is not tenable. The demand appears to have been liquidated, and interest was, therefore, properly decreed.

*Interest is properly decreed upon a liquidated account secured by mortgage.*

It is further insisted, that the Court erred in not giving longer day for the payment of the sums decreed against the mortgagor.

The decree *nisi* required the payment to be made on the day following, and not being paid, a decree on that day was rendered for the sale of the mortgaged property.

The object in giving day, is to afford the mortgagor an opportunity to redeem by paying the money. It is not a mere matter of form. Such being the object, a reasonable time, under the circumstances, should be allowed for accomplishing it. What would be reasonable time, must rest in the exercise of a sound discretion by the Chancellor. The general practice in this State, we believe, has been to give until some day in the succeeding term. It was so considered by this Court, in *Martin* vs *Wade's executors,* (5 *Monroe,* 80,) and that, we think, would in general be reasonable time; but as there is no fixed rule of law upon the subject, the time to be given should depend very much upon the circumstances of the case, to be judged of by the Chancellor.

*On decree, the payment of money secured by mortgage, day should be given for payment in the sound discretion of the Chancellor. This is not matter of form, but reasonable time to be determined by the circumstances of the case should be given, from one term to another is usual.*

The decree *nisi* in this case, required in effect, the payment to be made *instanter,* and nothing in the record is furnished to justify such extreme rigor. The amount was large, near $10,000, and we think that the usual time should have been given, and that the time given was unreasonable. The proposition of the Court, to give longer time, if the mortgagor would give bond for the rent and forthcoming of the property, did not cure the error,

in requiring the immediate payment of the money. If such a requisition, under any circumstances, should have been made, we think it should not have been, under the circumstances of this case. By an order of the Court, upon the exhibition of the original bill, the mortgagor, in order to retain possession of the personal property and slaves, had been required to give bond for the forthcoming thereof to abide the decree of the Court. Such bond had been given, and was still in force.

For the errors indicated, the decree is erroneous, and should be reversed. But as the parties have filed an agreement in the cause, to the effect, that if this Court should be of opinion that Richardson had not made out sufficient ground for a rescission of his purchase, but that the decree upon other grounds was erroneous, that it should nevertheless only be reversed so far as it relates to the sums improperly decreed against him in favor of the mortgagees. If this Court should be of opinion, that in that respect the decree was erroneous, and to the extent that Richardson in that behalf was entitled to relief, that the cause should be remanded, with directions to render a decree against the proper parties in his favor, for such sums as had been improperly decreed against him.

We are of opinion that Richardson was entitled to a credit of $55, with interest from the 4th November, 1841, as against the claims of G. W. Parrott. The presumption is, that he was also entitled to a credit for the alledged note on Forsythe for $143, as against the claims of Parrott and Robertson. And there is some reason to believe that he has not been credited for the $185. As to the two last items, the case will be open upon the return of the cause, for reference to a Commissioner, and for further proof.

The decree is also erroneous in decreeing the entire costs of the mortgagees against Richardson. He should have been decreed his costs upon his cross bill.

As to the items thus designated, the decree is reversed, and the cause remanded for further proceedings, and such decree as may be found equitable and consistent with this opinion. And as to the residue of the decree, under the

agreement of the parties, it is affirmed, and Richardson is entitled to his costs in this Court.

Morehead & Reed and Shuck for plaintiff; McHenry for defendants.